UNITED STATES of America,
Plaintiff-Appellee,

v.

David Elmer BLOOMGREN,
Defendant-Appellant.

No. 86–1634.

United States Court of Appeals,
Tenth Circuit.

March 27, 1987.

Before HOLLOWAY and SEYMOUR, Circuit Judges, and SAFFELS, District Judge *.

SAFFELS, District Judge.

## I. *Background*

David Elmer Bloomgren was indicted for violating 18 U.S.C.App. § 1202(a), a felon in possession of a firearm, and for violating 21 U.S.C. § 841(a)(1), possession of a controlled substance with intent to distribute. The trial commenced on these charges on March 3, 1986, and a guilty verdict on both counts was returned by the jury on March 4, 1986. On April 17, 1986, defendant was sentenced to two years imprisonment on Count 1 and four years imprisonment on Count 2, with the sentences to run concurrently. Bloomgren was given a three year special parole term pursuant to the provisions of 21 U.S.C. § 841.

Before trial, defendant filed several motions, including a motion to require the United States to name the confidential informant who provided the information as stated in the affidavit of Special Agent George H. Barnes of the Bureau of Alcohol, Tobacco and Firearms. On January 28, 1986, the court held a hearing on this motion. A written Order denying defendant's motion requiring the United States to name the confidential informant was filed on February 3, 1986.

Shortly before trial, on February 27, 1986, defendant filed a motion for an order directing twenty-six witness subpoenas to be issued at the government's expense. A hearing was held on February 28, wherein David Bloomgren testified. At the hearing, the defendant testified as to his financial inability to cover the expenses of the requested witnesses. Defendant also testified as to the substance of the proposed testimony of these twenty-six witnesses. Bloomgren testified that his witnesses would testify as to their acquaintance with the defendant over a period of years and their lack of knowledge as to the defend-

Ronald G. Pretty, Atty., Cheyenne, Wyo., for defendant-appellant.

Francis L. Pico, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty. with him on the brief), D. Wyo., for plaintiff-appellee.

* The Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation.

ant's possession of firearms. Some of those witnesses would also be called to testify as to the area in which the contraband was found, to support defendant's contention that the area was open and anyone had easy access to the area. After the hearing, the court partially granted defendant's motion, in that it issued an order subpoenaing only three witnesses at government expense. The court ruled that the defendant did have the liberty to call other witnesses at his own expense. Bloomgren appeals from these two rulings.

## II. *Disclosure of Confidential Informants*

At the hearing on January 28, 1986, defendant sought to obtain the name of the confidential informant who provided information for the affidavit prepared by Special Agent George H. Barnes of the Bureau of Alcohol, Tobacco and Firearms. At that hearing, the defense attorney stated that the defendant felt that there were inaccuracies in the affidavit for the search warrant. Bloomgren never contended that Special Agent Barnes lied on the affidavit for the search warrant, but rather that lies were told to Agent Barnes by the informant and relied on by Agent Barnes in drawing up the affidavit. Bloomgren also specifically objected to the reliability of the confidential informant on the grounds that his or her reliability had not been established by prior contacts. Agent Barnes' affidavit stated:

I, George H. Barnes, am employed as a Special Agent of the Bureau of Alcohol, Tobacco and Firearms, Cheyenne, Wyoming.

On or about January 23, 1985, a confidential informant who has proven to be reliable on most occasions, reported to me that he was employed on a part-time basis as a mechanic for David Bloomgren, dba Riverside Motors. This informant stated further that David Bloomgren routinely carries a small pistol in his hip pocket and usually has a firearm in his office.

On or about February 8, 1985, Casper Police Officer Mike Bachert reported to me that he had a confidential and proven reliable informant who stated to him that he (the informant) has seen David Bloomgren in possession of several stolen firearms. Officer Bachert reported that this observation was alleged to have been made at Riverside Motors. The time and date of the observation was not specified.

On or about February 14, 1985, I conducted visual and electronic surveillance of an undercover contact by a Casper Police Department confidential informant. This undercover contact was at Riverside Motors with David Bloomgren. The informant made an unsuccessful attempt to purchase firearms from Bloomgren then left the premises. During debriefing, the informant stated that while on the premises he noticed the outline of a handgun in David Bloomgren's hip pocket.

On August 9, 1985, Casper Police Department Investigator Brad Blissett reported he had just interviewed a private citizen who had voluntarily come to him to report alleged criminal acts by David Bloomgren. Blissett stated the citizen was a former employee of Bloomgren and requested to remain anonymous. The citizen reported that David Bloomgren is closely associated with the Saints motorcycle gang and is involved in narcotics trafficking activities with the Saints and others. This citizen further stated that David Bloomgren is normally in possession of a chrome or nickel finished, semi-automatic pistol, approximately a .38 caliber. According to this person, the firearm is kept in one of three locations: in Bloomgren's desk drawer in the office of Riverside Motors; in Bloomgren's hip pocket; or under the driver's side front seat of Bloomgren's automobile. The citizen stated he has seen this firearm in Bloomgren's possession within the last 48 hours.

Although this person's reliability has not been established by prior contact as an informant, his truthfulness on this occasion is documented by the following:

On June 20, 1985, ATF Special Agents Patricia Lewis and Steve Pirotte made an undercover contact with David

Bloomgren at Riverside Motors. The Special Agents reported they did not see any firearms in plain view and no discussion of firearms was conducted. The Agents did report that Bloomgren commented that he had a close personal relationship with local members of the Saints motorcycle gang.

Bloomgren has been identified as an active close associate of numerous persons currently under investigation in at least two Federal narcotics investigations.

Bloomgren also has been identified by a Casper Police Department investigator as an active close associate of persons under investigation in a significant conspiracy to distribute stolen pharmaceutical drugs.

Bloomgren argued that the affidavit had to be false based on his contention that he was out of town when the confidential informant allegedly saw him in possession of a firearm. Alternatively, defendant requested an in camera hearing for the purpose of identifying the informant and determining if this confidential informant was telling the truth. At the January 8, 1986 hearing, the defendant introduced a credit card slip from the 7th day of August in support of his argument that he was out of town on the date that the informant allegedly saw him in possession of guns.

In response to defendant's motion, the government argued that because Bloomgren did not contend that Special Agent Barnes, the affiant, lied on the affidavit, defendant did not meet his burden under the decision in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The government also brought to the court's attention the fact that the credit card slips offered by the defendant were not conclusive evidence as to defendant's whereabouts. One credit card account slip did not contain the defendant's or any individual's name. The second slip did not contain David Bloomgren's account name or number, but rather an individual by the name of Denise Schwilke. The government argued that defendant's evidence clearly did not meet the "substantial showing" of falsehood required by the decision in

*Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77, and *Schauble*, 647 F.2d 113, 117 (10th Cir.1981). Alternatively, the government asserted that defendant could not demonstrate that the affiant proceeded in reckless disregard of the truth nor that the affiant did not thoroughly investigate the reliability or the veracity of the informant and his or her statement.

On February 3, 1986, the court issued a written Order which stated:

> IT IS FURTHER ORDERED that Defendant's Motion for Hearing Pursuant To *Delaware v. Frankes*, [sic] Motion to Suppress Search Warrant Due to Affidavit that Does Not Show Probable Cause, Motion to Suppress Evidence, and Motion For Name of Confidential Informant be, and the same are hereby, denied because and for the reason that under *United States v. Schauble*, 647 F.2d 113 (10th Cir.1981), it is not enough to show that an informant may have lied to an unsuspecting affiant. A warrant may only be challenged through a showing that the affiant acted knowingly or with reckless disregard for the truth, by including a false statement in an affidavit.

*Id.* The United States Supreme Court decision in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), laid the foundation for a defendant to move the court to request the name of a confidential informant. In *Franks*, the United States Supreme Court held that there is a presumption of validity with respect to an affidavit supporting a search warrant.

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.

*Id.* at 171, 98 S.Ct. at 2684.

In *Franks*, the Supreme Court cited an earlier decision, *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), for its holding that the due process clause does not require a state to expose an

informant's identity routinely, upon a defendant's mere demand, when there is ample evidence in the hearing to show that the informant was reliable and his information credible. *Id.* at 170. The Court further stated that "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Id.* at 171, 98 S.Ct. at 2684. It is not enough to show that the informant deliberately lied to an unsuspecting affiant. *United States v. Schauble,* 647 F.2d 113, 117 (10th Cir.1981) (citing *Franks v. Delaware,* 438 U.S. at 171, 98 S.Ct. at 2684). Thus, to qualify for a *Franks* hearing, Bloomgren must have made a substantial showing that Barnes knew of, or recklessly disregarded, the informant's information. *Schauble,* 647 F.2d at 117.

■ We note the Supreme Court's decision in *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957), which acknowledged the public's interest in protecting the identity of confidential informants in order to encourage the flow of information necessary in criminal prosecutions. *Id.* In resolving this issue, we hold that the public's interest, as recognized in *Roviaro,* imposes procedural requirements and evidentiary burdens on a defendant who requests the disclosure of the confidential informant. *United States v. Kiser,* 716 F.2d 1268, 1271 (9th Cir.1983). We agree with the trial court that Bloomgren did not make a substantial showing that the affiant, Agent Barnes, knowingly made a false statement or made a statement in reckless disregard for the truth as required by *Franks* and *Schauble. See, e.g., Searing v. Hayes,* 684 F.2d 694, 697 (10th Cir.1982).

### III. *Subpoena of Defendant's Witnesses at Government Expense*

Bloomgren also asserts that his due process rights were violated by the refusal of the trial court to subpoena the twenty-six witnesses he requested at government expense. Defendant's motion for subpoenas at the government's expense was filed on February 27, 1986. Two hearings were held relating to this request on February 28, 1986. We note that at the initial hearing on defendant's request for subpoenaes, defendant did not appear in person. Based on Bloomgren's earlier indication to the court that he was going to hire his own attorney, and the inference that he had a source of funds, the court continued the hearing until later in the afternoon so that the defendant could appear.

At the afternoon portion of the hearing, defendant testified as to his assets and liabilities and financial inability to pay the expenses of the requested witnesses. The defendant conceded that if he had to, he would find a way to pay for witnesses. He represented to the court, however, that even though he was a working man, he could not afford to pay the expenses of these witnesses. At the hearing, the defendant testified that he earned approximately $800 per month, that his wife had an income of $1,200 per month, and that he and his wife owned 16 vehicles as part of the business of Riverside Motors. Bloomgren further testified as to his expenses each month, including $400 for food, approximately $150–$200 for utilities, and other payments made to pay loans on a motorcycle, pickup and the defendant's home.

Bloomgren also testified as to the general substance of those witnesses' testimony. Bloomgren testified that the requested witnesses would verify that they have known the defendant for periods of one to five years and state that they have never seen him with a firearm in his possession. Some of those witnesses would also testify to the fact that the firearm and methamphetamine in question were found in an open area of the defendant's place of business, known as Riverside Motors. Defendant's attorney conceded that the court might find these witnesses' testimony to be cumulative. Bloomgren's attorney further stated to the court that he himself had not spoken to any of these witnesses and could not testify as to the substance of their testimony.

On cross-examination, Mr. Pico questioned Bloomgren about his representations as to his financial inability to pay his wit-

nesses' expenses. Pico then questioned the defendant as to the specific testimony of some of the requested witnesses. The defendant conceded that the twenty-six witnesses requested were not present at Riverside Motors on August 13, 1985, when the defendant was found in possession of the firearm and the methamphetamine. Defendant also stated that each of the witnesses would testify to the same facts. The government also questioned Bloomgren about his ability to hire an attorney. In response, the defendant stated that he had hoped to retain an attorney on the condition that he would not have to compensate her until some future date.

■ We agree with the trial court that the defendant did not make a satisfactory showing as to the necessity of subpoenaing all twenty-six witnesses to provide an adequate defense. Rule 17(b) of the Federal Rules of Criminal Procedure provides:

The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.

No specific averments concerning the witnesses' testimonies were contained in the defendant's motion. Bloomgren's testimony did not reveal with specificity the substance of each of the individual witnesses' testimony. Bloomgren's attorney conceded that he had not had an opportunity to speak with these witnesses and represented to the court that the court may find these witnesses cumulative.

The trial court did not specifically state the basis for its restricted grant of the subpoenas other than to question the indigency of the defendant. We recognize, however, that a trial court need not grant a Rule 17(b) motion if a requested witness would only provide cumulative testimony. *United States v. Gallagher*, 620 F.2d 797, 800 (10th Cir.), *cert. denied*, 449 U.S. 878, 101 S.Ct. 224, 66 L.Ed.2d 100 (1980). While the trial court did not make any findings in support of its ruling, the record is clear that defendant failed to show a need for all twenty-six witnesses. Bloomgren conceded that these witnesses were not present on August 13, 1985, when he was found to be in possession of a firearm and methamphetamine. We cannot envision how the testimony of these witnesses would provide an adequate defense to the possession charges.

■ The trial court also must consider the request for subpoenas within the circumstances existing when the trial court's ruling was made. The timeliness of the request and the possible delay of trial are factors to be considered by a trial court. *See United States v. Stoker*, 522 F.2d 576, 579 (10th Cir.1975). At the conclusion of the hearing, the trial court noted that the hearing was held on Friday afternoon. The trial was to begin the following Monday morning, March 3, 1986. Thus, there was some question about the ability of the marshals to serve the subpoenas on the selected witnesses prior to the commencement of trial. We find that under the circumstances existing at the time of the hearing, the trial court did not abuse its discretion in limiting the defendant to three of his requested twenty-six subpoenas. This limitation did not deny the defendant of his right to due process.

## IV. *Conclusion*

For the reasons set forth above, defendant's conviction is AFFIRMED.